UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBBIE G. BISSMEYER,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>  Defendant. | Case No. 1:21-cv-00209-BAM<br><br>**ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE**<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING SOCIAL SECURITY COMPLAINT** (Docs. 12, 17)<br><br>FOURTEEN-DAY DEADLINE |

**INTRODUCTION**

Plaintiff Debbie G. Bissmeyer ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. The matter is currently before the Court on the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations.[2]

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's appeal and affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on September 4, 2018. AR 217-18.[3] Plaintiff alleged that she became disabled on May 3, 2018, due to a back injury, arthritis in her thumb, diabetes, insomnia, and her left and right shoulders. AR 217, 236. Plaintiff's application was denied initially and on reconsideration. AR 129-33, 135-39. Subsequently, Plaintiff requested a hearing before an ALJ. Following the hearing, ALJ Shane McGovern issued an order denying benefits on September 2, 2020. AR 13-29, 43-92. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ McGovern's decision the Commissioner's final decision. AR 1-6. This appeal followed.

### Hearing Testimony

On August 3, 2020, ALJ McGovern held a telephonic hearing. AR 43. Plaintiff appeared with her attorney, Jeffrey Milam. Deborah Christensen, an impartial vocational expert, also appeared and testified. AR 45.

In response to questions from the ALJ, Plaintiff testified that she lives with her husband, her parents and her 40-year-old son. Most of the time she can take care of herself, showering, getting dressed, and making small meals. She sometimes needs help if her pain is worse, and she cannot bend. Her husband will help wash her feet or cook dinner for her if she is in a lot of pain. AR 51-53.

---

[2] Not all parties have filed forms to consent or decline the jurisdiction of a magistrate judge. The Court will therefore request that the Clerk of the Court randomly assign a district judge to this action.
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff reported that she has a driver's license. She drives to the grocery store, which takes 20 minutes, but causes her pain in the lower back and down her right leg. She also has difficulty getting around the store due to pain in the same areas. AR 53-54.

When asked about her education and work background, Plaintiff testified that she attended some college, but she did not get a degree or certificate. Since her alleged disability date, Plaintiff worked part-time for about one month doing office work. She could not physically keep up because of the pain in her lower back, right leg, and in her hands from developing arthritis. Plaintiff also volunteered in a tax office, answering phones and directing calls, for about a week. She was okay doing the work because she could get up and move and change positions and there was no filing or typing. AR 55-57. When asked about past relevant work, Plaintiff confirmed that she worked for Mariposa County in different positions, including as accounting technician I and II and as account clerk II and III. AR 58-61.

In response to questions from her attorney, Plaintiff did not think she could return to any of her past jobs because she cannot stand or sit for long. She also cannot file and cannot lift anything heavy. AR 61. The longest she can stand is ten minutes before she gets low back pain that shoots down her right leg and into her right foot. She also has spasms. If she stands more than 15 minutes, then she will have frequent spasms, four or five times a day. She avoids lying down or elevating her legs, which causes pain. She sleeps fitfully. The lack of sleep makes it hard to cope, function and think clearly. On an average night, she gets four or five hours of sleep. She takes medications for sleep and for pain, but she still has trouble sleeping. AR 62-64. Her pain or mental health issues also cause her fatigue during the day. AR 65.

When asked about her ability to sit, Plaintiff testified that if she sits for too long, then her feet will go numb, and her pain will increase. She can sit for fifteen minutes before she has to change positions. AR 65. She could not return to her volunteer job for eight hours a day/five days a week because of her pain and lack of sleep. She nods off once or twice daily while seated. AR 66.

When asked about her hands and shoulders, Plaintiff testified that her hand aches and goes numb. She has pain in her right thumb and in the area below her thumb. She has a trigger thumb on

her left hand. All of her fingers are developing trigger fingers. She has had one surgery for the trigger thumb, but she still has pain. She also has had carpal tunnel release in both hands. AR 66-67.

Plaintiff reported she can use her hands for about ten minutes before she needs to rest for about five or ten minutes. These limitations exist both for manipulation tasks, like typing, and for grasping tasks, like washing dishes. AR 67-68. There has been a discussion of possible surgery for her hands to help with her arthritis, but it is a seven-month recovery time per hand. She has braces for her hands but quit using them because they increased the pain. AR 68-69. With regard to her shoulder, Plaintiff testified that she had a recurrent dislocation of the shoulder that was fixed with surgery. She still has problems reaching with the shoulder, and she can reach less than a third of the day. AR 69.

Plaintiff also testified that she has gastroenteritis, colitis, and other "GI" issues. Those issues cause her to use the bathroom frequently. On average, she has 20 bad days per month, needing three or four breaks for bowel movements. AR 70.

When asked about her mental health issues, Plaintiff reported that her mental health has progressively worsened, and stress would make difficult to work. Her difficulties started after she stopped working. She tried medications for her anxiety and depression-related problems, but the medications made her sick. To cope, she isolates in her room. She has crying spells two-to-three times a week. AR 71-75.

Plaintiff also testified that she helps out some with caregiving for her parents. She cooks for them and drives her dad to some of his appointments. She has been taking care of them for about three or four years. AR 75-76.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE classified Plaintiff's past work as accounting clerk and accounting clerk supervisor. AR 79-80. The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of claimant's age, education, and work background. This person could perform light work, but "no ladders, ropes, or scaffolds and up to occasional as far as ramps and stairs, balance, stoop, crouch, kneel and crawl," no more than occasional overhead reach on the left side, no exposure to moving mechanical parts or unprotected heights, no more than occasional exposure to chemicals, no more than occasional exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor

ventilated areas, and no exposure to extreme cold or extreme heat. AR 80. The VE testified that both positions, accounting clerk and accounting clerk supervisor, would fit that hypothetical. AR 80-81. For the second hypothetical, if the individual was limited to no more than frequent handle, finger, and feel bilaterally, then the answer would remain the same. AR 81.

For the third hypothetical, the ALJ asked the VE to consider the limitations of the first two hypotheticals and drop the exertional level from light to sedentary. The VE testified that Plaintiff's past relevant work as customarily performed would fit the hypothetical. AR 81. The VE opined that employer tolerance for off-task behavior would be less than 15%. Employer tolerance for absences would be once monthly. AR 82.

For the fourth hypothetical, Plaintiff's counsel asked the VE to consider hypothetical three with a limitation to only occasional forward reaching bilaterally. The VE testified that Plaintiff's past work as an accounting clerk supervisor would remain. AR 82-83. If it was a limitation to only occasional use of the hands, including fingering, then work as an accounting clerk supervisor would be eliminated. AR 83.

For the fifth hypothetical, Plaintiff's counsel asked the VE to consider hypothetical four and add four trips to the restroom for 20 minutes each time in addition to normal breaks. The VE testified that this perhaps would be excessive and not tolerated if it was a consistent daily loss of time. The VE also testified that if this person occasionally could not deal with the usual stress in any workplace, then this person would not be able to do Plaintiff's past relevant work. AR 83-84.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 16-29. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 3, 2018, her alleged onset date. AR 18. The ALJ identified the following severe impairments: obesity, insomnia, diabetes mellitus type II, chronic sinusitis and rhinitis, asthma, arthritis of the carpometacarpal joint of both

thumbs, thoracic spine and lumber spine degenerative disc disease, and residuals from left shoulder surgery. AR 18-20. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 20-21.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that she could not climb ladders, ropes, or scaffolds, could up to occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She could no more than occasionally reach overhead with the left upper extremity and could no more than frequently handle, finger, and feel bilaterally. She could have no exposure to moving mechanical parts or unprotected heights and no more than occasional exposure to chemical or pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She could have no exposure to extreme cold or extreme heat and must have a bathroom on site. AR 21-29. With this RFC, the ALJ found that Plaintiff could perform her past relevant work as an accounting clerk and accounting clerk supervisor. The ALJ therefore concluded that Plaintiff had not been under a disability from May 3, 2018, through the date of the decision. AR 29.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### DISCUSSION[4]

Plaintiff argues that the ALJ's RFC finding is not based on substantial evidence and is not free of legal errors. In particular, Plaintiff contends that (1) the ALJ improperly rejected the opinions of the consultative examiners, Dr. Megan Stafford and Dr. Joseph Serra; and (2) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony.

**A.  Evaluation of Medical Opinions**

Plaintiff contends that the ALJ erroneously rejected the opinion of Dr. Stafford, the consultative psychologist, and the opinion of Dr. Serra, the consultative orthopedist.

**1.  Legal Standard**

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 404.1520c  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2). "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted).

**2. Analysis**

Dr. Megan Stafford

On December 18, 2018, Dr. Stafford, a licensed psychologist, completed a consultative mental evaluation. Plaintiff reported the onset of PTSD, within the last six months, and described symptoms that included getting upset and angry easily and throwing things. AR 629. Plaintiff also "reported being able to adequately handle some responsibilities of daily living including hygiene and grooming, household chores (limited due to pain), and keeping appointments." AR 630. She indicated being able to drive and make basic meals. Her hobbies and interests included crochet, reading, table games, limited walking, and using a stationary bike as a stair stepper. AR 630-31. On examination, Plaintiff's concentration, persistence, and pace were within normal limits. She was cooperative and polite, and no psychomotor agitation or retardation was noted. Her thought process was grossly logical, organized, and coherent, with no loosening of associations. Her speech was normal, and no impairment in receptive and expressive language was observed. Her mood was euthymic and her affect congruent. When asked about her current mood, Plaintiff stated, "Right now I'm okay. I'm not at home. When we start [to] go home, I get depressed and don't want to go home." AR 631. Plaintiff was oriented x4 and her verbal response time was within normal limits. Her memory was grossly intact, and she displayed fair insight and judgment. AR 31-32.

Following examination, Dr. Stafford opined that Plaintiff's ability to perform simple and repetitive tasks was unimpaired, her ability to perform detailed and complex tasks was unimpaired, her ability to accept instructions from supervisors was mildly impaired, and her ability to interact with co-workers, supervisors, and the public was unimpaired. Additionally, her ability to perform work activities on a consistent basis without special additional instructions was unimpaired, her ability to maintain regular attendance in the workplace was unimpaired, and her ability to complete a normal workday without interruptions from a psychiatric condition was mildly impaired. However, her ability to deal with the usual stress encountered in the workplace was moderately impaired due to her emotional dysregulation, low frustration tolerance, and limited coping skills. AR 632-33.

In evaluating Dr. Stafford's opinion, the ALJ reasoned, in relevant part, as follows:

> The undersigned concludes that Dr. Stafford's opinion is supported by the unremarkable results of the consultative examination, the overall mild symptoms documented in the treatments records, and the benign psychiatric findings observed by treating medical providers. Dr. Stafford concluded that the claimant's ability to deal with workplace stresses is moderately impaired due to her emotional dysregulation, low frustration tolerance, and limited coping skills. The undersigned does not consider this part of Dr. Stafford's opinion to be persuasive, because Dr. Stafford did not provide sufficient supporting medical evidence or explanation to justify a moderate level of limitation in this area. Furthermore, the mood symptoms that the claimant described at the consultative examination, such as getting upset and angry easily and throwing things, are not documented elsewhere in the treatment record. Dr. Stafford's assessment of moderate limitations in dealing with workplace stress is not consistent with the unremarkable mental status findings at the consultative examination and throughout the medical record. Furthermore, the extent of the claimant's daily activities is not consistent with this part of Dr. Stafford's opinion, including her ability to take care of her parents and perform other necessary daily activities.

AR 27.

The Court finds that the ALJ properly evaluated the persuasiveness of Dr. Stafford's opinion. First, the ALJ determined that Dr. Stafford did not provide sufficient supporting medical evidence or explanation to justify a moderate impairment in the ability to deal with workplace stress. AR 27. This reasoning invokes the supportability factor, which means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); *Woods*, 32 F.4th at 791-92. The ALJ noted Dr. Stafford's unremarkable mental status examination findings, which showed that Plaintiff's concentration, persistence, and pace were

9

within normal limits. She was cooperative and polite with no psychomotor agitation. Her speech was normal with no impairment in receptive or expressive language. Her thought process was logical, organized, and coherent. She had a euthymic mood and congruent affect, with reported mood symptoms when at home. She also had fair insight and judgment. AR 27, 631-32. The ALJ's determination that the unremarkable findings did not support a moderate limitation in dealing with workplace stress is supported by substantial evidence.

Plaintiff contends that, contrary to the ALJ's assessment, Dr. Stafford explained the moderate limitation in dealing with workplaces stress by reference to Plaintiff's "emotional dysregulation, low frustration tolerance, and limited coping skills." (Doc. 12 at 11.) As the ALJ indicated, however, there was no objective medical evidence from the mental status examination to support such a limitation in the workplace. Dr. Stafford identified no evidence of emotional dysregulation, low frustration tolerance, or limited coping skills during the examination. Plaintiff herself asserted that the mood symptoms occurred at home and expressed that she was okay when not at home.

Second, the ALJ determined that the mood symptoms described by Plaintiff, such as getting upset and angry easily and throwing things, were not documented elsewhere in the treatment record, and the moderate limitation in dealing with workplace stress was not consistent with the unremarkable mental status findings throughout the medical record. AR 27. This reasoning expressly invokes the consistency factor, which "means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.' *Id.* § 404.1520c(c)(2)." *Woods*, 32 F.4th at 792. With regard to the other mental status findings in the record, the ALJ noted that treatment records in 2017 and 2018 showed no report of depression or other psychiatric symptoms, and Plaintiff had normal psychiatric findings, including normal mood, affect, behavior, and thought content. AR 26 (citing AR 373-457); 390 (review of systems negative for depression; normal mood and affect; normal behavior); 404 (normal mood and affect; normal behavior); 418 (normal mood and affect; normal behavior); 437 (normal mood and affect; normal behavior). The ALJ acknowledged Plaintiff's report to her physician that she had PTSD, her symptoms had progressed due to her parents, and that Xanax did not help her mood fluctuations and irritability. AR 26, 638. However, on examination, Plaintiff had normal mood, affect, behavior, and thought content. AR 640.

Also, as noted by the ALJ, during clinic visits in 2019, Plaintiff consistently showed normal psychiatric findings, including normal mood, affect and behavior. AR 27, 640, 645, 689 (normal mood and affect; normal behavior), 703 (normal mood and affect; normal behavior). The ALJ reasonably determined that the absence of mood symptoms and unremarkable examination findings in the treatment record did not support the moderate limitation assessed by Dr. Stafford. Plaintiff does not specifically identify any treatment records or mental status findings that the ALJ failed to consider or that would otherwise suggest error.

Third, the ALJ also determined that the extent of the claimant's daily activities was not consistent with Dr. Stafford's moderate limitation. AR 27. This reasoning also properly invokes the consistency factor. *Woods*, 32 F.4th at 792. In this case, the ALJ specifically considered Plaintiff's ability to take care of her parents and perform other necessary daily activities. AR 27. As explained by the ALJ, Plaintiff's activities were noted to include driving her father to appointments five times a week, acting as sole caregiver for her mother, cooking, performing housework, and grocery shopping. AR 28, 52, 53, 75-76, 686.

To the extent Plaintiff suggests an alternative interpretation of the evidence, this is not sufficient to establish reversible error. If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

<u>Dr. Serra</u>

On December 7, 2018, Dr. Serra completed a consultative internal medicine evaluation. AR 623-27. Plaintiff chiefly complained of back pain. AR 623. On physical examination, Plaintiff's gait was within normal limits and her Romberg was negative. Her straight leg raising was negative bilaterally in the seated posture, but supine posture straight leg raising was positive at 45 degrees in both right and left lower extremities with resultant low back pain. Her motor strength was 5/5 and her sensory exam was grossly intact. AR 626. She had limited lumbar range of motion on extension and tenderness in the lumbosacral paravertebral muscles. AR 625.

Dr. Serra opined that, at the maximum, Plaintiff could stand and walk up to two hours in an eight-hour day due to back pain. Her maximum sitting capacity was up to four hours due to back pain.

Her maximum lifting and carrying was 20 pounds occasionally and 10 pounds frequently. As for postural activities, steps and stairs could be done frequently, balancing, stooping, and crouching could frequently be performed, and she occasionally could do ladders, kneel, or crawl. AR 626. As for manipulative activities, Dr. Serra opined that Plaintiff could frequently perform reaching overhead, forward handling, fingering, and feeling. She could only occasionally reach overhead with the left upper extremity. Handling, fingering, and feeling were frequently performed without difficulty. As for workplace environmental limitations, Dr. Serra opined that Plaintiff had no limitations to hearing, speaking, traveling, or hazards, but she had limitation with extremes of temperature and working around chemicals, dust, fumes, and gases. AR 627.

Relevant here, the ALJ found portions of Dr. Serra's opinion not persuasive, reasoning as follows:

> Dr. Serra's conclusion that the claimant can sit for only four hours is not persuasive, because it is not consistent with the unremarkable physical examination findings or with the mild findings documented by the imaging studies of her spine. Furthermore, this portion of his opinion is somewhat vague, because he did not specify whether the claimant is limited to sitting up to four hours at one time or four hours total in an eight-hour workday. However, the rest of Dr. Serra's opinion is consistent with the other evidence of record and is supported by appropriate medical evidence and explanation.

AR 25-26.

Plaintiff argues that the ALJ's rejection of Dr. Serra's sitting limitation fails because the ALJ failed to articulate how he considered the supportability and consistency factors in reaching this finding. (Doc. 12 at 16.) The Court disagrees. The ALJ expressly considered both consistency and supportability in evaluating the persuasiveness of Dr. Serra's opinion as a whole. As to the sitting limitation in particular, the ALJ determined that it was not consistent with Dr. Serra's unremarkable physical examination findings or with the mild findings documented by the imaging studies of her spine. AR 25. This reasoning considers the extent to which Dr. Serra's sitting limitation is consistent with evidence from other medical sources, (20 C.F.R. § 404.1520c(c)(2) (consistency), and the extent to which it is supported by Dr. Serra's own objective medical examination findings, (20 C.F.R. § 404.1520c(c)(1) (supportability). As to apparent supportability, the ALJ also found Dr. Serra's sitting

limitation "somewhat vague" because Dr. Serra did not specify whether Plaintiff was limited to sitting up to four hours at one time or four hours total in an eight-hour workday.  AR 25-26.

Plaintiff next appears to challenge the ALJ's rejection of Dr. Serra's opinion because Dr. Serra himself did not characterize the results of Plaintiff's MRI as "mild" or the results of his examination as "unremarkable." (Doc. 12 at 16-17.)  The Court is not persuaded.  First, Plaintiff cites no authority for the proposition that these determinations must be made by the medical provider in the first instance.  Second, there is no indication that the ALJ mischaracterized the nature of the MRI findings or Dr. Serra's examination findings.  The MRI findings at issue showed generally only "mild" or "minimal" degenerative changes, and there was an absence of central canal stenosis and only mild or no narrowing of the neural foramina.  AR 23, 623, 371-72.  Dr. Serra's examination findings noted limited lumbar range of motion only on extension and tenderness in the lumbosacral paravertebral muscles, but the remaining findings on examination were limited and generally normal, including a normal gait, no edema, full motor strength, and inconsistent straight leg raising, negative in the seated posture.  AR 624-26.  To the extent Plaintiff suggests an alternative interpretation, this is not sufficient to establish reversible error.  *Ford*, 950 F.3d at 1154.

Plaintiff next argues that the ALJ's finding that Dr. Serra did not specify whether Plaintiff was limited to sitting up to four hours at one time or four hours total in an eight-hour workday is a "red herring."  (Doc. 12 at 17.)  Plaintiff asserts that she could stand/walk for two hours in an eight-hour workday, "so regardless of whether she could sit for only 'up to' four hours at a time or sit for four hours total, his opinion shows she could only work six hours a day." (*Id.*)  The Court disagrees with this calculation.  Sitting for up to four hours *at one time* suggests that a claimant can sit for more than four hours *total* in an eight-hour workday, making the total time that a claimant could work greater than six hours in an eight-hour workday.  In this instance, the ALJ determined, based in part on Dr. Serra's relatively benign physical examination results, that Plaintiff could stand and/or walk for up to two hours total and sit for six hours *total* in an eight-hour workday.  AR 23.

For the reasons stated above, the Court finds that the ALJ did not err in his evaluation of the opinions of Drs. Stafford and Serra.

///

**B. Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 22. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ found that Plaintiff's statements were not entirely consistent with the medical record. AR 22. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681. Here, with regard to her back impairment and pain, the ALJ noted that imaging studies of her back showed "overall mild degenerative findings that do not correlate to a disabling back condition, and that do no show evidence of nerve root or central canal stenosis." AR 23. According to the record, and as addressed above, the MRI findings at issue showed generally mild or minimal degenerative changes, no central canal stenosis, and only mild or no narrowing of the neural foramina. AR 371-72.

Likewise, the ALJ found that Plaintiff's physical examinations were "largely unremarkable" and did "not document clinical signs of a disabling back impairment." AR 23. For instance, the ALJ acknowledged that in May 2018, Plaintiff had tenderness to palpation of her lumbar spine and paraspinal muscles and a positive straight leg raising test (AR 23, 452, 454), but also correctly noted that subsequent physical examinations were unremarkable and did not document abnormal

musculoskeletal or neurological findings. AR 23, 437, 465 (normal range of motion), 470 (no edema or tenderness; coordination normal), 473, 478 (normal range of motion), 602, 689, 703, 725. The ALJ also considered a January 2020 detailed physical examination completed by the pain management specialist, which showed a normal gait and ambulation without a device. Although she had restricted lumbar range of motion with extension, she had normal flexion, normal right and left lateral bending, and normal lateral rotation to the left and to the right. Her heel and toe walk were normal. She also had normal tone, normal muscle strength, and negative straight leg raising test. AR 23, 734-37. In addition to the these largely normal and unremarkable findings, the ALJ considered the relatively unremarkable consultative examination findings, discussed supra, which included inconsistent straight leg testing. AR 23, 623-27.

As to her alleged gastrointestinal problems and symptoms, the ALJ determined that the medical evidence did not corroborate Plaintiff's testimony, and the record did not show evidence of a medically determinable gastrointestinal impairment that could cause the symptoms she described at the hearing. AR 25. The ALJ indicated that Plaintiff underwent extensive evaluation in 2018, but a colonoscopy and esophagogastroduodenoscopy were normal, biopsies showed no significant pathology, and an abdominal CT scan was unremarkable. AR 25, 466-67. The ALJ determined that by November 2018, Plaintiff denied having diarrhea or other gastrointestinal problems. AR 26, 648. Subsequent treatment records showed no complaints of gastrointestinal problems, and she had not been diagnosed with a gastrointestinal impairment or received treatment for one. AR 25, 638-40, 641-45, 686-91, 699-704, 748-50. Plaintiff does not challenge the ALJ's findings regarding her alleged gastrointestinal symptoms.

Second, the ALJ found that Plaintiff's statements regarding her back pain symptoms were inconsistent with the conservative nature of her treatment. AR 23. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). The ALJ noted that Plaintiff's treating physician prescribed pain medication, anti-inflammatory medication, and referred her for physical therapy. AR 23, 452, 454. A pain management specialist also recommended an epidural

steroid injection, which Plaintiff did not appear to pursue. AR 23, 736. The ALJ's characterization of the treatment as conservative is not unreasonable and is supported by the record. *cf. Martin v. Colvin*, No. 1:15-cv-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) (discussing that "courts have frequently found that the fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods"); *see also Schilling v. Comm'r of Soc. Sec.*, No. 1:21-CV-01268-SAB, 2022 WL 17418343, at *10 (E.D. Cal. Dec. 5, 2022) (finding the ALJ's characterization of plaintiff's treatment on whole as conservative was not unreasonable, where the majority of plaintiff's continued treatment for her multiple impairments over multiple years appeared to consist largely of medications and therapy).

Third, the ALJ found that Plaintiff's failure to pursue even conservative treatment likely to alleviate her pain and improve her ability to function, such as physical therapy, was not consistent with her allegations regarding the severity of her pain and limitations. AR 23. An ALJ may properly consider a failure to pursue prescribed treatments in evaluating a claimant's subjective complaints. *See Burch*, 400 F.3d at 681 ("That Burch's pain was 'not severe enough to motivate [her] to seek [these forms of] treatment,' . . . even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain"); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (finding that "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" to be a relevant factor in assessing a claimant's subjective complaints); *Schilling*, 2022 WL 17418343, at *9 ("the failure to pursue prescribed treatments is also a relevant consideration to the ALJ's credibility determination"). Plaintiff does not adequately challenge or address this reason for discounting her subjective complaints.

Fourth, the ALJ determined that Plaintiff engaged in a wide range of daily activities that were not consistent with a finding that she was disabled and instead demonstrated the ability to perform at least sedentary work. AR 28. An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged

symptoms"), *superseded on other grounds by regulation.* For instance, the ALJ considered Plaintiff's report that she did household chores, watered plants, worked on the computer, could walk almost a mile, carried light grocery bags from the car to the house, shopped, vacuumed, mopped, cleaned bathrooms, drove, and did yard work, such as watering and pulling weeds. AR 28, 271-72. The ALJ acknowledged Plaintiff's report of some difficulty doing these activities but concluded that they demonstrated "a greater ability to sit, stand, walk, lift, and use her hands than she . . . alleged at the hearing." AR 28. The ALJ also considered Plaintiff's report in April 2019 that she took care of both of her parents, driving her father five times a week to chemotherapy appointments and acting as sole caregiver for her mother. AR 28, 686.

In addition to these reported activities, the ALJ considered Plaintiff's hearing testimony that she takes care of herself, such as showering, dressing, and preparing meals most of the time. AR 28, 52. She sometimes needs help, for example her husband washes her feet because she cannot bend and sometimes cooks meals if she is in pain. AR 52-53. She has a driver's license, and she drives to the grocery store, which is a 20-minute drive, but it causes pain in her lower back and down her right leg. AR 53-54. The ALJ also considered Plaintiff's testimony that she had been taking care of parents for three or four years, cooking, driving her father to some of his appointments, and keeping an eye on them. AR 28, 75.

Plaintiff argues that the ALJ erroneously found that her daily activities supported a finding that she was not disabled. (Doc. 12 at 21.) In particular, Plaintiff argues that her daily activities were limited and there is no evidence that any of her activities took longer than 15 minutes, other than driving to the grocery store. (*Id.*) However, the ALJ expressly considered Plaintiff's reported difficulties, but determined that her daily activities did not support a disabling impairment. AR 28. For instance, the ALJ considered Plaintiff's written statement in January 2020, in which she indicated that her back and hand issues had worsened, and that she needed help with many activities, such as getting dressed, bathing, cleaning the house, and cooking meals. AR 28, 310-11. Nevertheless, ALJ found that Plaintiff's daily activities, "considered in the context of the generally benign examining findings and the nature of medical treatment that the claimant has received, support a finding that she is not disabled from sedentary work." AR 28. The Court cannot conclude that this was error. Even

where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints. But even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina*, 674 F.3d at 1115 ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Further, for the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Debbie G. Bissmeyer.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 27, 2023**                                    /s/ *Barbara A. McAuliffe*
                                                                                 UNITED STATES MAGISTRATE JUDGE